The People *ex rel.* Allaben agt. The Board of Supervisors of Delaware.

## SUPREME COURT.

### The People *ex rel.* James R. Allaben agt. The Board of Supervisors of the County of Delaware.

A judgment of the supreme court, recovered in a contested action, against the overseers of the poor of a town, in their official characters, is conclusive evidence of the liability of their town to pay the demand on which the recovery was had; and the board of supervisors of the county have no right to go back of the judgment, and inquire whether the demand was a proper charge against the town. The fact that the judgment was rendered upon the report of a referee does not vary its effect.          ▸

The judgment being regular on its face, *estops* the board of supervisors from inquiring whether the town was originally liable to pay the demand upon which it was recovered.

Where a board of supervisors refused to levy and assess such a judgment upon the town represented by the overseers of the poor, on the ground that the town was not originally liable to pay the demand upon which the recovery was had; *held* erroneous, and a *mandamus* was granted to compel them to collect such judgment.

It was also held, that the judgment should be collected of the town represented by the overseers of the poor, although there was no distinction in the county between town and county poor.

The decision in this case does not necessarily conflict with that of *Gere agt. Supervisors of Cayuga County.* (7 *How. Pr. R.* 255.)

It being the duty of the board of supervisors to collect the judgment of the town,

The People *ex rel.* Allaben agt. The Board of Supervisors of Delaware.

*held*, that a request by the relator to collect it of the town or county was sufficient, the board having refused to collect it of either the town or county.

Also held, where the statute required the board of supervisors to collect a judgment upon the presentation to them of a certified copy thereof, that the production to them of the original record was a substantial compliance with the statute.

Allegations in the return to an alternative *mandamus* not proved, which are denied by the relator in his pleas, are not to be taken as true on the trial of the issues formed by the pleadings.

A curious case, illustrating the uncertainty of the law, and the pursuit of legal remedies under difficulties.

If the overseers of the poor of a town who have sufficient moneys in their hands belonging to their town, not specially appropriated, refuse to pay a judgment rendered against them as such overseers, which is regular upon its face, they become *personally* liable to pay the amount of such judgment, with interest thereon.

No execution can issue upon such a judgment; but if it is not paid by the overseers of the poor, out of moneys in their hands belonging to their town, it should be assessed, levied and collected of such town by the board of supervisors of the county.

*Delaware Circuit and Special Term, Jan.,* 1856.

THIS action was tried before Justice BALCOM, without a jury, at the Delaware circuit, in January, 1856, when the following facts were proved:—

The relator, on the 10th day of July, 1852, recovered a judgment in this court against Ira Whitcomb and Contine Connelly, overseers of the poor of the town of Middletown, in Delaware county, for $112.05 damages, and $59.47 costs, on an account that the relator purchased of Jonathan C. Allaben, and which account was for services rendered by the latter as a physician at the request of one David C. Sliter, a former overseer of the poor of said town. The services were performed in attending upon and prescribing for several poor families when the small-pox prevailed in Middletown in 1846.

The judgment-roll was filed, and the judgment was docketed in the office of the clerk of the county on the day aforesaid. The action in which the judgment was recovered was tried before a referee. It was defended by attorneys retained and paid by the superintendents of the poor of the county. The superintendents appealed, in the name of the overseers, from the

The People *ex rel.* Allaben agt. The Board of Supervisors of Delaware.

judgment to a general term of this court; which appeal was dismissed in January, 1853, by the request of the overseers, and against the wishes of the county superintendents. No stay of proceedings on the judgment was obtained, and no security for costs was given on the appeal.

While the appeal was pending, the relator presented the judgment-roll to the board of supervisors at their annual meeting in November, 1852, and the board postponed action thereon until their next meeting in December following, when the relator requested the board to audit and collect the amount of the judgment against the county, in the same manner as contingent expenses of the county are levied and collected, which the board refused to do. The board then passed a resolution waiving the presentation to them of a certified copy of the judgment-roll. After the appeal was dismissed, and in November, 1853, the relator again presented the judgment-roll to the supervisors at their annual meeting; and also again at their meeting in December of that year. The presentation of a certified copy of the roll was not required. At each of said times the relator asked the board to audit and levy the amount due on the judgment; first against the county, which was refused, and then against the town, which was also refused. The board, however, at one time passed a resolution to allow the relator $125 on the judgment, if he would accept that sum in satisfaction of his claim, which sum he refused to accept, and it was not levied or collected.

The account on which the judgment was recovered was twice presented, before it was assigned to the plaintiff by Jonathan C. Allaben, to the county superintendents of the poor, for allowance or payment, and they refused to audit or pay it.

There was no distinction between town and county poor in Delaware county at the time the account was made, nor has there been any such distinction since that time. The supervisors refused to collect the judgment of either the town or county, on the ground that the overseers of the poor of Middletown were not liable, in their official capacity, to pay the account upon which the judgment was recovered; the board

being of the opinion that the judgment was not conclusive upon them. And after investigating the account, they came to the conclusion that the judgment was erroneous and void, and that they ought not to audit it or collect it.

The relator obtained an alternative writ of mandamus, commanding the defendants (the board of supervisors of Delaware county) to properly assess, levy and collect the judgment, or show cause to this court why they had not done so. The defendants made their return to the writ. The relator pleaded thereto. Issues were joined thereon, which are now tried.

JAMES R. ALLABEN, *counsel in person.*
GORDON, MORE & PALMER, *for defendants.*

BALCOM, Justice. The point made by the defendants' counsel, that the board of supervisors could go back of the judgment; or, in other words, sit in review of a judgment of this court, recovered in a contested action, seemed to me, on the trial, as novel as the proposition once made by a member of the legislature, to amend the Code, so that appeals from the judgments of justices of the peace should be made to the town meetings in the several towns where the justices giving the judgments reside; and that the decisions of the town meetings should be final, and be ascertained by a *viva voce* vote of the electors. Subsequent reflection, and an examination of the statutes and authorities bearing upon the case, have not relieved my mind of this impression.

The judgment is entirely regular and valid on its face against the overseers of the poor of Middletown in their official characters; but I am asked to pronounce it void, as against the town or county; or, in other words, to hold that the court erred that gave it. And it is assumed that I should do this because the board of supervisors have reviewed it *ex parte*, or in the exercise of some undefined discretion, ascertained that the court or referee who tried the issues in the action, committed an error, in holding that the overseers of the poor of Middletown, as such, were liable to pay the demand for which the

recovery was had. This I cannot do. It will better comport with sound principles to hold, that the only way to avoid an erroneous judgment of this court, recovered on a contested trial, is by an appeal, or by a motion to set it aside.

If the supervisors could go behind the record, and ascertain whether the demand was just or unjust, legal or illegal, reasonable or unreasonable, they could proceed *ex parte*, or act upon affidavits or hearsay evidence, and reject or admit such evidence as they pleased; and then refuse to allow the claim: and when called into court to answer for their conduct, they could say to the court, " You have given a wrong judgment, and we have, therefore, disregarded it. Now acknowledge your errors, and award us costs for the information we have given you." Although boards of supervisors are composed of very intelligent men, the absurdity of such a proposition must be apparent to the most zealous reformer.

The fact that the judgment was entered upon the report of a referee, does not alter the case, or vary its effect. " The report of the referee upon the whole issue stands *as the decision of the court*, and judgment may be entered thereon in the same manner as if the action had been tried by the court." (*Code,* § 272.)

It is unnecessary, in determining this action, to hold, that a judgment rendered upon *confession*, against an overseer of the poor in his official capacity, concludes the supervisors, so they cannot inquire whether the whole or any part of the account on which the confession was made was a county charge. (*Gere* agt. *Supervisors of Cayuga County,* 7 *How. Pr. R.* 255.)

The relator's request to the board of supervisors, to audit his judgment against the town *or* county, was sufficient. The board should have ascertained whether it was a proper charge against the town or county, and then assessed it against whichever was liable to pay it.

The relator should have presented to the board " a certified copy of the docket of his judgment, or the record thereof, if required by the board." (2 *R. S.* 475, § 102.) He presented the original judgment-roll, without any copy of the docket.

The original roll was higher evidence than a certified copy; and its production, instead of a copy, was a substantial and sufficient compliance with the statute. (*Ex parte Newell, receiver, &c.,* 4 *Hill,* 608.) A certified copy of the docket of the judgment was not called for; and a presentation of a certified copy of the roll was expressly waived by the board; and it does not appear that the board refused to levy and collect the judgment because no certified copy of the docket was presented to them. They placed their refusal on other grounds. The defendants should therefore be precluded from now insisting that the relator should have presented to them a certified copy of the docket of his judgment.

If the defendants' positions are correct, the relator's judgment is a nullity. The statute forbids the issuing of execution upon such judgment. (2 *R. S.* 476, § 107; 19 *Wend.* 50; 11 *id.* 181; 4 *Hill,* 138.)

If the supervisors cannot be compelled to assess it upon the town represented by the overseers of the poor, it must remain uncollected; for the overseers of the poor cannot be made personally liable to pay it *by their simple refusal to pay,* because they only render themselves personally liable when they refuse to pay moneys in their hands, not specially appropriated, upon judgments recovered, "on account of the liability of their town." (2 *R. S.* 474, 475, §§ 102, 105.) And it is conceded, if this judgment was recovered " on account of the liability of the town," that the supervisors can be compelled to collect it. It must also be admitted, if the former overseer of the poor of Middletown was liable, in his official capacity, to pay the account upon which the judgment was recovered, then his successors in office were properly sued for the debt. (2 *R. S.* 473–475, §§ 92–99; *see* 7 *Wend.* 181; 4 *Hill,* 168; 11 *Wend.* 181.)

The overseers of the poor are agents of their town, and a judgment recovered against them, as such overseers, binds their town, within principles that may be found in the following cases:—*Calkins* agt. *Allerton,* 3 *Barb. R.* 171; *Gelston et al.* agt. *Hoyt,* 13 *Johns. R.* 561; 1 *Duer,* 79; 6 *Barb.* 515; 18 *Johns. R.* 352; 5 *Denio,* 299; 5 *Esp. N. P. Cases,* 56; 1 *Paige,*

41; 5 *Denio,* 497; 2 *Doug.* 499; 4 *Tenn. R.* 590; 24 *Wend.* 35, 53.) And it follows, of course, that a judgment binding upon the town cannot be questioned by the board of supervisors, when they are called upon to enforce it according to the statute.

The judgment being conclusive evidence that the recovery was had against the overseers of the poor of Middletown, for a debt contracted on account of the liability of such town, the supervisors, upon the production to them of the record of the judgment, should have assessed, levied and collected the amount of such judgment, with interest thereon to the first Monday in February then next, against the town of Middletown. (2 *R. S.* 474, 475, § 102–107; *Avery & Lathrop* agt. *Slack,* 19 *Wendell,* 50; *The Supervisors of Galway* agt. *Stimson,* 4 *Hill,* 138.)

The statutes above cited show that the supervisors had no discretion in the premises; nor had the overseers of the poor against whom the judgment was rendered, any right to refuse to pay it, provided they had sufficient moneys in their hands belonging to their town, not specially appropriated; and a failure to do so, if they had such moneys, made them personally responsible to the relator for the amount of such judgment and interest thereon. (2 *R. S.* 475, §§ 104, 105; 4 *Hill,* 138.)

The defendants' counsel have insisted that I should refuse to grant a peremptory *mandamus,* on the ground that the published decisions of this court, as they claim, show the judgment in question to be erroneous; and the cases of *Vedder* agt. *The Superintendents of the Poor of the County of Schenectady,* 5 *Denio,* 564; *Holmes and others, overseers,* agt. *Brown, overseer,* 13 *Barb. R.* 599, and *Green* agt. *Brown,* 4 *Hill,* 558, have been cited to establish such proposition. A short but sufficient answer to all this is, I am not reviewing the judgment as an appellate court, but am only considering it when it collaterally comes in question.

As an off-set to this proposition, I will remark, that an opinion has been furnished me, showing that the first litigation over the account forming the basis of the judgment in controversy, was in an action brought in a justice's court, by the relator against Sliter personally, who was the overseer of the poor of

Middletown when the account was made. The justice gave judgment against Sliter on the account. The county court of Delaware county reversed the judgment, on the ground that Sliter was not *personally* liable; holding that the debt was contracted in his official character, and that the town, or his successor in office, was liable to pay it; and this court, at a general term thereof, affirmed the judgment of the county court. If the relator could now be beaten in this action, he might well complain of the uncertainty of the law. And such a boxing of the judicial compass, in search of justice, without success, would be a reproach to the law, or those who administer it.

Another point made by the defendants' counsel is, that the return to the alternative mandamus shows that the relator *knew* this court would reverse his judgment, if it should be brought to a hearing at a general term, on the appeal made by the county superintendents of the poor; and that, knowing such fact, and by fraudulently suppressing the same from the knowledge of the overseers of the poor of the town, and by other fraudulent conduct, he induced them to consent to a dismissal of such appeal. These allegations of fraud are denied by the relator in his pleas; but the position taken is, that the relator must not only deny such allegations, but must also *prove* them untrue; or the court, under the statute, (2 *R. S.* 586, § 55,) must regard the same as true, and decide accordingly. I will say nothing about the improbability of the relator knowing what the court *would* decide, for it seems to me the point is clearly untenable.

It is proper to add, although there is no distinction as to the support of the town and county poor in Delaware county, the judgment in question must be collected of the town, against the officers of which the same was recovered. (2 *R. S.* 475, § 103.)

The conclusions before mentioned determine the whole case. It therefore becomes unnecessary to examine any other points made by the defendants' counsel.

I find for the relator on all the issues in the case; and judgment in his favor is ordered against the defendants for costs; and a peremptory mandamus is granted to the relator, com-

manding the defendants to assess, levy and collect the amount of the judgment aforesaid, with interest thereon from the day it was docketed until the first Monday in February, 1857, (unless it shall be sooner paid,) against the town of Middletown, as other contingent charges against such town are assessed, levied and collected.