UTICA,
August, 1823.

Todd
v.
Birdsall.

Todd and McCord, Overseers of the Poor of the town of Cortlandt, *against* Birdsall.

*The office of overseers of the poor of a town is, for certain purposes, a corporation.*

*And the capacity to sue and be sued is, of necessity, incident to that office, in order to execute the particular trust reposed in them.*

*Accordingly, they are subject to an action for debts contracted by their predecessors, as overseers.*

*Where P, an overseer of the poor of the town of C, in 1820, gave an order, as overseer, on B, in favor of G, for the support of the poor of the town of C, which was accepted and paid by B; held, that T and M, overseers of the poor of the same town, in 1822, were liable, as a corporation, in assumpsit, for the debt thus contracted by P,*

On certiorari to a Justice's Court. In the Court below, *Birdsall* declared against *Todd* and *McCord*, that he sold divers goods to *Sarah Griffin*, who kept a pauper of the town of *Cortlandt*, at the request of *Jeremiah Pugsley*, one of the Overseers of said town; and also for money paid to the said *Sarah Griffin*, at the request of *Pugsley*, for the support of the pauper, $14. Plea, the general issue.

It was admitted, that *Pugsley* was one of the Overseers of the Poor in 1819 and 1820, and the defendants in 1822. The plaintiff produced an order, dated *January* 24, 1820, drawn by *Pugsley*, as Overseer, on the plaintiff, requesting him to let *Sarah Griffin* have to the amount of fourteen dollars, and that he (*Pugsley*) would account for the same. *Pugsley* testified that the order was for the support of the poor of *Cortlandt* town; that the plaintiff paid it, and that he, the witness, had never paid the plaintiff; that the order was drawn in his official capacity; that he was indebted to *Sarah Griffin* for keeping a pauper, and gave the order to satisfy the demand. The Justice gave judgment against the defendants for $14 damages and costs.

*Curia.* Overseers of the Poor are not a corporation, according to the technical meaning of the term. In the case of the *Overseers of Pittstown* vs. the *Overseers of Plattsburgh*, (18 *John.* 418,) they are considered as the publick agents and trustees of the town, in respect to their poor, and possess, necessarily, without express authority from the legislature, a capacity to sue, commensurate with their publick trusts and duties. In *Johnson* v. *Hartwell*, (8 *John.* 424) this Court held, that the Supervisors of a county were a corporation for special purposes, and with special powers only; that there are many instances, in the law, of collective bodies of men coming under one general description, endowed with a corporate capacity, in some particulars expressed, but who

have, in no other respect, the capacities incident to a corpo-
ration. This principle is applicable to the case under consid-
eration. Suing and being sued seems to be, of necessity, in-
cident to the office of Overseers, in order to execute the par-
ticular trust reposed in them. Whether they are liable for
the acts of their predecessors, has not been expressly deci-
ded ; but they have been held liable, in their private capaci-
ty, for their own official acts. In *King* v. *Butler*, (15 *John.*
281) it was held, that an Overseer was liable to a suit, when
he had requested the plaintiff to maintain a pauper, and
made an express promise to pay, although no order had ev-
er been made for the relief of the pauper. In the present
case, the question is, whether the action can be sustained a-
gainst the defendants, who now represent the interests of the
town, in relation to the poor, and for whose benefit the ad-
vance was made. It seems highly expedient, that legal lia-
bilities, incurred by their predecessors in office, for the sup-
port of the poor, ought, upon a sound construction of their
duties and powers, to devolve upon them. It is incident to
their office, which, in this respect, may be viewed in the na-
ture of a corporation. The judgment below ought to be af-
firmed.

Judgment affirmed.(a)

(a) There are certain officers and bodies of men, such as *Church War-
dens*, (1 *Kyd on Corporations*, 29, 30, 31) *Overseers of the Poor*, (18 *John.*
418) *the Supervisors of a county*, (8 *John.* 424-5) *the Loan Officers of a
county*, (*ibid.* 426) *School Districts*, (13 *Mass. Rep.* 193) *Towns, Parishes,
Cities, Hundreds* and *Counties*, (9 *Cranch*, 52 ; 4 *Wheat.* 663, 668 ; 7
*Mass. Rep.* 187 ; 1 *Greenleaf's Rep. Maine*, 363, 364) which are called
*quasi corporations*. Upon the question, how far these may become parties
in a court of justice, as corporations, whether in the capacity of plaintiffs
or defendants, the authorities do not appear to be uniform. It is said, in
*Russell et al.* v. *The Men of Devon*, (2 *T. R.* 667) *Riddle* v. *The Proprie-
tors of the Locks and Canals on Merrimack River*, (7 *Mass. Rep.* 187, *per
Parsons, Ch. J.*) and in *Adams* v. *Wiscasset Bank*, (1 *Greenleaf's Maine
Rep.* 361) that no action will lie against these, unless expressly given by
statute. Thus, in the 2 *T. R.* 672, it is said that an action will lie against
the hundred, upon the statute of *Winton*, and in *The Inhabitants of Brew-
er* v. *Inhabitants of New-Gloucester*, (14 *Mass. Rep.* 216) an action was
held to lie, by statute, against the inhabitants of a town, for supporting
a pauper. Similar instances may be seen in 2 *Penn. N. J. Rep.* 500 ; 3

UTICA,
August, 1823.

TODD
v.
BIRDSALL.

*Con. Rep. N. S.* 1, 553, 588 and 600 ; and in several other books ; but whether this is by statute, I am not informed. It is said in the 2 *T. R.*, 7 *Mass. Rep.*, and 1 *Greenleaf*, above referred to, that, in these cases, every inhabitant is an immediate party, and is liable, as such, in person and property ; for there is no corporate fund, out of which to make payment. But, in the case of *The Inhabitants of the 4th School District, in Rumford* v. *Wood*, (13 *Mass. Rep.*192) it was decided that a school district may have a right to sue, as a corporation, *implied* and *incidental ;* this being necessary to the execution of their other powers ; and they were accordingly allowed to maintain an action on a contract to build a school-house, and to make a lease of land to them ; and the same thing was holden of Overseers of the Poor, in 18 *John.* 418.

*Randall et al. Trustees of School District No.* 18, &c. v. *Hubbard,* decided by the Supreme Court of this state, at *May* term, 1823, on certiorari from a Justice's Court, was assumpsit in the Court below, by *Hubbard* against *Randall, Boics* & *Merrick,* as Trustees of District No. 18, in the town of *Homer,* in *Cortland* county. *Hubbard* sought to recover for money expended, and work performed by him, in and about building a school-house, for the district, in 1816, while himself, with *Hopkins* and *Randall,* were trustees. This action was brought in 1819, the defendants below being their successors in office. Judgment having been given against them, one question raised by the counsel, was, whether the defendants could be made parties to such a suit. There were 4 or 5 other errors, upon which the Court were clear for reversing the judgment, so that it became unnecessary to decide the cause upon this point : and it was also made a question, upon the facts which were proved in the Court below, whether the school-house had not been built by voluntary subscription. Ch. J. SAVAGE, who delivered the opinion of the Court, however, in the course of his remarks, expressed a doubt whether the trustees of a school district were a body corporate, for the purposes of that action ; and whether they could make any contract for the payment of money, which should be binding upon their successors in office.

*Wiswall* & *Stephens,* for the plaintiff in error.

*Donnelly* & *Beach,* contra.

The objection which has uniformly been made, to bringing actions against these *quasi corporations,* is, the hardship of subjecting individual property to the payment of corporate demands. And in *Myers et al.* v. *Irwin,* (2 *Serg.* & *Rawle,* 371) *Tilghman,* Ch. J. says, " The personal responsibility of the stockholders is inconsistent with the nature of a body corporate." In the case cited above, from 2 *T. R.* which was an action against *The men residing in the county of Devon,* for not repairing a bridge, whereby the plaintiff's waggon was injured, Lord *Kenyon* says, " The argument used by the defendant's counsel, that all those who become inhabitants of the county, after the injury sustained, and before judgment, would be liable to contribute their proportion, is entitled to great weight. I do not say that the inhabitants of a county, or hundred, may not be incorporated to some purposes ; as if the king were to grant lands to them, rendering rent, like the grant to the good men of the town of *Islington,* (*Dyer*

UTICA,
August, 1823.

TODD
v.
BIRDSALL.

100.) But where an action is brought against a corporation, for damages, those damages are not to be brought against the corporators, in their individual capacity, but out of their corporate estate : but if the county is to be considered a corporation, there is no corporation fund out of which satisfaction is to be made." *Ashhurst*, J. says, " If damages are recoverable against the county, at all events, they must be levied on one or two individuals, who have no means, whatever, of reimbursing themselves; for, if they were to bring separate actions against each individual of the county, for his proportion, it is better that the plaintiff should be without remedy." An authority was cited, and approved, in that case, from *Br. Abr. title, accion sur le case, pl.* 93, where it is said, that, if an highway be out of repair, by which my horse is mired, no action lies, "*car est populus et surra reforme per presentment.*"

In *Lyon et al.* v. *Adams et al.* (4 *Serg.* & *Rawle's Rep.* 443) the action was against the defendants, who, at the commencement of the suit, were Commissioners of *Cumberland* county, for monies due the testator of the plaintiffs, for erecting, &c. a publick building for the county, and for certain fees claimed to be due from the county. *Tilghman,* Ch. J. says, " It does not appear that the defendants were Commissioners at the time the services were performed, for which the fees claimed in this suit are charged. It is impossible, then, that the law can imply an assumption to charge them in their private capacities; and yet, as such, and in no other way, will they be charged, if judgment goes against them in this suit. Their being named Commissioners, in the writ, is of no importance. They are not sued by any corporate name. If, indeed, the Commissioners constitute a corporation, liable to be sued, the suit should be against *the Commissioners,* without naming them individually, and then the judgment would be entered in like manner. But we give no opinion, whether such suit be maintainable. It would be attended with difficulties. The Commissioners not being entrusted with the funds of the county, on what could the execution be levied ? Or what would be the benefit of a judgment against a corporation which has no property ?"

In the state of *Pennsylvania,* Overseers of the Poor are made a corporation, by statute. (1 *Smith's Laws,* 338.) And, as such, they may sue, and be sued. And, in *The Overseers of the Poor of the township of North Whitehall* v. *The Overseers of the Poor of the township of South Whitehall,* the action was brought, without naming the Overseers individually. (3 *Serg.* & *Rawle's Rep.* 117.)

In the above case, cited from 13 *Mass. Rep.* brought by a school district, all the above arguments, from inconvenience, were urged, but disregarded by the Court. The case underwent great consideration, and it was finally decided, that a *school district* may sue, as a corporation, by its corporate name. Speaking of these districts, the Court, by *Parker,* Ch. J. say, " That they are not bodies politick and corporate, with the general powers of corporations, must be admitted ; and the reasoning and authorities advanced, to shew their defect of power, are conclusive. The same may be said of towns, and other municipal societies ; which, although recognized by various statutes, and by immemorial usage, as persons, or aggregate corporations.

with precise duties which may be enforced, and privileges which may be maintained, by suits at law, yet are deficient in many of the powers incident to the general character of corporations. They may be considered, under our institutions, as *qua* corporations, with limited powers, co-extensive with the duties imposed upon them by statute or usage ; but restrained from a general use of the authority, which belongs to these metaphyisical persons by the common law. The same may be said of all the numerous corporations, which have been, from time to time, created, by various acts of the legislature ; all of them enjoying the power which is expressly bestowed upon them, and, perhaps, in all instances, where the act is silent, possessing, by necessary implication, the authority which is requisite to execute the purposes of their creation. They differ in character, also, from those corporations, which exist, at common law, in some particulars. It is not necessary that our municipal corporations should act under seal, in order to bind themselves, or obligate others to them. A vote of the body is sufficient for this purpose ; and this mode has prevailed with the proprietors of common and undivided land, even in the disposition of their real property, contrary to the general provision of law, respecting the transfer of real estate. It will not do, therefore, to apply the strict principles of law, respecting corporations, in all cases, to these aggregate bodies, which are created, by statute, in this commonwealth. By the several statutes which have been passed, respecting school districts, it is manifest, that the legislature has supposed, that a division of towns, for the purpose of maintaining schools, will promote the important object of general education ; and this valuable object of legislative care seems to require, in construing their acts, that a liberal view should be had to the end to be effected."

Further, as to the instances of corporations *quasi*, vid. 1 *Kyd on Corp.* 9, 10, 12.

In *Olney* v. *Wickes*, (18 *John*. 122) the defendant had, as Overseer, contracted to pay the plaintiff for keeping the paupers. He went out of office, and the action was brought against him in his individual capacity, without naming him *Overseer*, or *late Overseer*, &c. And it was holden by the Judge, at the Circuit, and so seems to be the opinion of the Court, that he might have been sued by *name*, adding his official character ; though, having contracted in his publick character, as *Overseer*, he was not individually and personally liable. The reasoning of the Court, however, turned on the doctrine of principal and agent ; and, allowing him to be the latter, I suppose they would not consider him liable, in any capacity, but put the plaintiff to his remedy, against the principal, as was done in *Hodgson* v. *Dexter*, (1 *Cranch*, 345) upon which the majority of the Court principally relied.

The reasoning of the Court, in the 18*th John*. 418, seems fully to sustain the doctrine advanced in the case cited from 13 *Massachusetts Reports*.